UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALINA KOLESNIKOW,

                Plaintiff,

   - against -

HUDSON VALLEY HOSPITAL CENTER
and CATHERINE McNAMARA,

              Defendants.

Case No. 05-9858 (SCR) (GAY)

# MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Of Counsel:

Sean H. Close (SC-7429)
PUTNEY, TWOMBLY, HALL & HIRSON LLP
*Attorneys for the Defendants*
521 Fifth Avenue
New York, New York 10175
(212) 682-0020

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES………………………………………………………………..ii

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

    A.   The Parties ................................................................................................. 3

    B.   Plaintiff's Disciplinary Record at HVHC ................................................. 4

    C.   Plaintiff's Termination.............................................................................. 6

    D.   Plaintiff's NYSDHR Complaint ............................................................... 7

    E.   HVHC's Terminal Pay Policy .................................................................. 7

    F.   HVHC's Policy on Overtime.................................................................... 7

ARGUMENT......................................................................................................... 9

I.   PLAINTIFF CANNOT STATE A *PRIMA FACIE* CASE OF DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN OR AGE ...................................... 9

    A.   No National Origin Discrimination Can Be Inferred................................ 10

    B.   No Age Discrimination Can Be Inferred .................................................. 12

II.  HVHC HAD NON-DISCRIMINATORY REASONS FOR TERMINATING PLAINTIFF'S EMPLOYMENT .......................................................... 13

III. PLAINTIFF HAS OFFERED NO EVIDENCE THAT HVHC FAILED TO PAY HER OVERTIME COMPENSATION FOR HOURS WORKED OVER 40 PER WEEK............................................................................................ 15

IV. HVHC HAD NO CONTRACTUAL OR STATUTORY OBLIGATION TO PAY PLAINTIFF FOR HER ACCRUED VACATION OR SICK TIME WHEN SHE WAS TERMINATED ................................................................. 20

V.  PLAINTIFF'S TORT CLAIMS ARE UNTIMELY AND UNSUPPORTED BY THE RECORD EVIDENCE ................................................................. 21

    A.   Statute of Limitations................................................................................ 22

    B.   Assault and Battery .................................................................................. 23

    C.   Intentional Infliction of Emotional Distress ............................................. 24

CONCLUSION..................................................................................................... 26

# TABLE OF AUTHORITIES

Page

## Federal Cases

Abdu Brisson v. Delta Air Lines Inc., 239 F.3d 456 (2d Cir. 2001) .............................................. 9

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S. Ct. 1187 (1946) .............................. 16

Belfi v. Prendergast, 191 F.3d 129 (2d Cir. 1999).......................................................................... 14

Bjornson v. Daido Metal U.S.A., 12 F. Supp. 837 (N.D. Ill. 1998) ........................................ 19

Boyke v. Superior Credit Corp., 2006 U.S. Dist. LEXIS 93928 (N.D.N.Y. Dec. 28, 2006)........ 16

Brown v. Bronx County Med. Group, 834 F. Supp. 105 (S.D.N.Y. October 14, 1993)..............23

Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234 (S.D.N.Y. 2000)..................................... 10

Carlton v. Mystic Transp., Inc., 202 F.3d 129 (2d Cir. 2000) ...................................................... 11

Carroll v. Bayeriche Landesbank, 125 F. Supp. 2d 58 (S.D.N.Y. 2000)..................................... 23

Clarke v. UFI, Inc., 98 F. Supp. 2d 320 (E.D.N.Y. 2000) ........................................................ 24

Davis v. Pforr, 792 F.2d 1274 (4th Cir. 1986).............................................................................. 19

Forrester v. Roth's IGA Foodliner, Inc., 646 F.2d 413 (9th Cir. 1981)........................................ 19

Gardner v. St. Bonaventure University, 171 F. Supp. 2d 118 (W.D.N.Y. 2001) ........................ 22

Grady v. Affiliated Cent., Inc., 130 F.3d 553 (2d Cir. 1997), cert. denied,
   525 U.S. 936, 119 S. Ct. 349 (1998).............................................................................. 11, 13

Greaves v. St. Luke's/Roosevelt Hosp. Ctr., 2005 U.S. Dist. LEXIS 4082
   (S.D.N.Y. Mar. 16, 2005) .................................................................................................... 17

Hansel v. Sheridan, 991 F. Supp. 69 (N.D.N.Y. 1998)................................................................. 25

Holmes v. Lorch, 329 F. Supp. 2d 516 (S.D.N.Y. 2004)............................................................. 22

Jones v. Yonkers Public Schools, 326 F. Supp. 2d 536 (S.D.N.Y. 2004) .................................... 11

Lucas v. South Nassau Communities Hospital, 54 F. Supp. 2d 141 (E.D.N.Y. 1998)................. 25

McLaughlin v. Murphy, 436 F.Supp.2d 732 (D. Md. 2005) ........................................................ 16

Minton v. Lenox Hill Hospital, 160 F. Supp. 2d 687 (S.D.N.Y. 2001)....................................... 10

Mystic Transp. Inc. v. Carlton, 530 U.S. 1261, 120 S. Ct. 2718 (2000) ..................................... 11

Newton v. City of Henderson, 47 F.3d 746 (5th Cir. 1995) .......................................................... 19

Phipps v. Comprehensive Comm. Dev. Corp., 2005 U.S. Dist. LEXIS 1672
   (S.D.N.Y. Feb. 2, 2005)........................................................................................................ 17

Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 441 (S.D.N.Y. 1998) ........................ 25

Page

Posner v. Sprint/United Management Co., 2007 U.S. Dist. LEXIS 2001 (S.D.N.Y. Mar. 21, 2007) ................................................................................................................. 12

Pronin v. Raffi Custom Photo Lab, Inc., 383 F. Supp. 2d 628 (S.D.N.Y. 2005).......................... 11

Ramos v. Marriott Int'l, Inc., 134 F. Supp. 2d 328 (S.D.N.Y. 2001)........................................... 11

Reeves v. Anderson Plumbing Prods., Inc., 530 U.S. 133 120 S. Ct. 2097 (2000) ...................... 9

Roper v. Hynes, 2006 U.S. Dist. LEXIS 69128 (S.D.N.Y. 2006)................................................. 25

Sanders v. New York City Human Resources Admin., 361 F.3d 749 (2d Cir. 2004) ................... 9

Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155 (2d Cir. 1999) ........................... 17

Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364 (S.D.N.Y. 2005)............................................... 22

St. Mary's Honor Center v. Hicks, 509 U.S. 502 113 S. Ct. 2742 (1993)..................................... 9

Tarshis v. Riese Org., 211 F.3d 30 (2d Cir. 2000)........................................................................ 9

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981)............... 9

Wanamaker v. Columbian Rope Co., 740 F. Supp. 127 (N.D.N.Y. 1990)................................... 24

William v. Port Auth., 880 F. Supp. 980 (E.D.N.Y. 1995).......................................................... 24

## State Cases

Bailey v. New York Westchester Square Medical Centre, 2007 NY Slip Op 99 at *5, 829 N.Y.S.2d 30 (1st Dept. 2007)..................................................................................25

Demas v. Levitsky, 291 A.D.2d 653,738 N.Y.S.2d 402 (3rd Dept. 2002), appeal denied, 58 N.Y.2d 728 (2002) ................................................................................................ 25

Di Orio v. Utica City School Dist. Bd. of Educ., 305 A.D.2d 1114, 758 N.Y.S.2d (4th Dept. 2003)........................................................................................................ 25

Fama v American Int'l Group, Inc., 306 A.D.2d 310, 311, 760 N.Y.S.2d 534 (2003)..............25

Gennes v. Yellow Book of New York, Inc., 23 A.D.3d 520, 806 N.Y.S.2d 646 (2d Dept. 2005) ..................................................................................................... 21

Glenville Gage Co. v. Industrial Bd. Of Appeals, 70 A.D.2d 283, 421 N.Y.S.2d 408 (3d Dept. 1979), aff'd, 52 N.Y.2d 777, 436 N.Y.S. 621 (1980)............................... 20

Jaffe v. National League for Nursing, 222 A.D.2d 233, 635 N.Y.S.2d 9 (1st Dept. 1995).......... 25

Murphy v. American Home Prods., Inc., 58 N.Y.2d 293, 461 N.Y.S. 2d 232 (1983) ................. 24

# TABLE OF AUTHORITIES
(cont'd)

Page

**Statutes**

N.Y. Lab. Law § 198-c ........................................................................................................ 20

29 U.S.C. § 201 .................................................................................................................... 1

29 U.S.C. § 207(a) .............................................................................................................. 16

29 U.S.C. § 621 .................................................................................................................... 1

42 U.S.C. §2000e ................................................................................................................. 1

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Putney, Twombly, Hall & Hirson LLP on behalf of Defendants Hudson Valley Hospital Center ("HVHC") and Catherine McNamara ("McNamara"), in support of Defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing Plaintiff's Second Amended Complaint (the "Complaint").

Plaintiff, a Nursing Assistant formerly employed by HVHC, alleges that disciplinary actions taken against her by HVHC, culminating in the termination of her employment by HVHC in August 2004, constituted discrimination on the basis of her Polish national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") (First Cause of Action) and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") (Second Cause of Action). Plaintiff has further alleged that HVHC failed to pay her overtime at the rate of one and one-half times her regular hourly wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA") (Third Cause of Action).

Plaintiff has also asserted pendent state law claims. Specifically, she has alleged that HVHC violated Articles 6 and 19 of the New York Labor Law by failing to pay overtime and not paying her the accrued vacation and sick leave she had at the time of her termination (Fourth Cause of Action), that McNamara committed an assault and battery on her person on August 2, 2004 (Fifth Cause of Action) and that Defendants' actions constituted intentional infliction of emotional distress under New York law (Sixth Cause of Action). As demonstrated below, the pleadings and discovery in this case have not revealed the existence of any triable issues of fact concerning any of Plaintiff's causes of action and the Complaint should, therefore, be dismissed as a matter of law.

Plaintiff's claims of discrimination are completely unsupported. Her employment was terminated because she left a patient entrusted to her care unattended and violated HVHC sanitary policy by placing a food tray on the floor, all on August 2, 2004. HVHC determined that these actions justified her termination when viewed together with the conspicuously high number of disciplinary actions of which she was the subject during her short employment at HVHC. Plaintiff's case appears to rest on her belief that every disciplinary action taken against her was unfair; that everyone she worked with was out to get her; and that McNamara, the very person who made the decision to hire her in September 2002, and who is older than Plaintiff, decided less than two years later to fire her because she is Polish and because of her age. Discovery revealed Plaintiff's claim to be based on nothing but speculation, hearsay and innocuous statements by unnamed employees that did not even arguably suggest discriminatory animus on the part of McNamara or other HVHC employees who decided to terminate Plaintiff's employment.

Plaintiff's wage and hour claims are equally unsupported. Plaintiff rests on conclusory assertions that she, on many occasions throughout her employment, worked more than 40 hours but was not paid one and one-half times her regularly hourly rate in violation of the FLSA and N.Y. Labor Law. Plaintiff goes so far as to allege that she was informed that HVHC simply did not pay overtime to Nursing Assistants. Plaintiff has no records to support her claims of unpaid overtime, nor has she identified any witness who would support her claims. By contrast, HVHC has records that establish that Plaintiff was paid 171.75 hours of overtime at the rate of time and a-half during her employment. As Plaintiff's allegations are unsupported by her testimony or any documentary evidence, they must be dismissed.

Plaintiff's claim for unpaid sick and vacation leave fails because she cannot demonstrate any agreement by HVHC to pay her such time upon her termination. By contrast, HVHC's

policies clearly state that it does not pay terminated employees any accrued time with the sole exception of paying accrued vacation and holiday leave to an employee who resigns and provides sufficient notice under HVHC policy. As there is no dispute that Plaintiff did not resign her employment, her claims for accrued leave time are baseless.

Plaintiff's intentional tort claims against McNamara -- and derivatively, against HVHC -- fail because they are time-barred under New York's one-year statute of limitations. Even assuming these claims are saved by tolling, as Plaintiff will argue, they are nonetheless unsupported by evidence in the record and should be dismissed.

## FACTUAL BACKGROUND [1]

### A.    The Parties

Hudson Valley Hospital Center ("HVHC") is a 128-bed not-for-profit hospital located in Cortlandt Manor, New York. Complaint ¶ 5. During her employment at HVHC, Plaintiff worked on its Brillinger Unit (the "Unit"), a 33-bed medical-surgery unit, dedicated primarily to caring for cardiac patients. Pl. Tr. 312; Complaint ¶ 10.

Catherine McNamara is the Clinical Nurse Manager of the Brillinger Unit and was so at all times relevant to this case. As Clinical Nurse Manager, McNamara is responsible for ensuring that nursing staff on the Unit provide services to HVHC's patients in accordance with HVHC's high standards and in compliance with all applicable regulations governing the practice of nursing in New York State. McNamara has ultimate supervisory authority over all nursing staff on the Unit, including RNs and Nursing Assistants. Accordingly, she was Plaintiff's direct supervisor. McNamara reported directly to Karen Keeler (now retired), HVHC's former Administrative Director of Patient Services. McNamara Aff. ¶¶ 1-3; Keeler Tr. 9-10.

---

[1]    A more detailed factual statement is presented in Defendants' 56.1 Statement and the affidavits of Ruth Johnson and Catherine McNamara submitted herewith. Citations to affidavits, transcripts and exhibits are made herein consistent with the format used in Defendants' Rule 56.1 Statement.

Plaintiff was hired by HVHC as a part-time Nursing Assistant on HVHC's Brillinger Unit on September 9, 2002. Plaintiff was promoted to a full-time Nursing Assistant position in March 2003. McNamara and Keeler made the decision to hire Plaintiff with knowledge that she was Polish. McNamara made the decision to promote Plaintiff to full-time status in March 2003. Complaint ¶ 10; Pl. Tr. 313; McNamara Aff. ¶ 4; Keeler Tr. 16.

Like other Nursing Assistants on the Unit, Plaintiff was regularly assigned to work three 12-hour shifts each week, typically 7am-7pm. Plaintiff was assigned to work as part of a team with an RN as team leader and a Licensed Practical Nurse ("LPN") or another RN. Each team was assigned specific patients to care for during the shift. McNamara Aff. ¶ 6.

Plaintiff's employment was terminated on August 12, 2004 for violations of HVHC policies and patient-care protocols. Plaintiff was 55 years of age on the date of her termination. Johnson Aff. ¶ 18; Pl. Tr. 243-45.

## B.     Plaintiff's Disciplinary Record at HVHC

Plaintiff was the subject of several disciplinary actions resulting from her failure to follow the instructions of the RNs she worked under on a day-to-day basis and her habit of making statements and patient-care decisions that were outside of her responsibilities as a Nursing Assistant. In the months between her promotion to full-time status in March 2003 and August 2003, McNamara received many complaints about Plaintiff from members of the nursing staff. These incidents were addressed informally as they occurred and McNamara counseled Plaintiff on several occasions for Plaintiff's failure to follow the instructions of the RNs she worked with. McNamara Aff. ¶¶ 16-18; Ex. O.

Plaintiff met with McNamara and Keeler on or about August 21, 2003 to discuss their concerns with her performance. McNamara Aff. ¶¶ 18-19. Several incidents involving Plaintiff's performance deficiencies were addressed during this meeting including:

- Providing information about vital sign readings to patients in violation of protocol mandating that such information be provided only by an RN or physician;

- Arguing with Denise Beckel, an RN, concerning the proper way to toilet a patient, in the presence of the patient;

- Unilaterally deciding to perform a blood sugar test (accu-check) at a time other than that designated by the physician and without first checking with an RN;

- Falsely reporting that RN Karoline Schott had thrown away a blood transfusion rather than giving it to a patient;

- Refusing to relieve another Nursing Assistant when asked to do so.

Plaintiff also received her first annual performance evaluation around this time. McNamara prepared the evaluation and, while otherwise praising Plaintiff's performance, noted that she "sometimes oversteps her role as a [Nursing Assistant]." Ex. P.

On November 4, 2003, Plaintiff allowed a patient to eat after having been informed that the patient was scheduled for surgery and therefore not permitted to eat. Plaintiff received a written warning and was suspended for two days for this incident. Ex. G; Johnson Aff. ¶ 11.

On or about May 3, 2004, Keeler learned that Plaintiff had made racially insensitive remarks to two African-American co-workers. Johnson Aff. ¶ 12; Exs. H, I. Bonnie St. John, a Caucasian Nursing Assistant, reported that Plaintiff questioned St. John about why she married a black man upon seeing Ms. St. John's son, who is African-American. Keeler Tr. 26-27; Ex. H. Johanna Walker, an African-American Dietary Aide, reported that Plaintiff approached her while she was eating lunch and, in response to Walker's comment that she worked two jobs, expressed surprise and stated that she thought black people were lazy. Johnson Aff. ¶ 14; Keeler Tr. 30-32; Ex. H.

Plaintiff met with Keeler and other officers of HVHC to discuss her comments to St. John and Walker. Pl. Tr. 175-86. Plaintiff did not deny the comments attributed to her, although she tried to rationalize them by stating that she meant no harm and was surprised upon seeing Ms. St.

John's son. She further indicated that she felt it was unusual for a white woman to marry a black man in Poland. Pl. Tr. 184-85. Keeler issued Plaintiff a written warning based on the racial comments and referred Plaintiff to the HVHC employee assistance program ("EAP") for sensitivity training. Keeler Tr. 29; Pl. Tr. 187-90; Ex. I.

## C. Plaintiff's Termination

On August 2, 2004, Plaintiff was assigned to provide one-to-one (1:1) care for a post-surgical patient who was pulling at her intravenous tube and, thus, was in danger of injuring herself. As Plaintiff was aware, a Nursing Assistant is never permitted to leave a 1:1 patient alone. McNamara Aff. ¶¶ 25-26; Pl. Tr. 130-131, 243.

During Plaintiff's 1:1 shift, McNamara observed Plaintiff in the hallway during the time she was supposed to be with her patient on two separate occasions during her shift. After the second time, McNamara followed Plaintiff to the patient's room and directly observed that there was nobody in the room with the patient. McNamara Aff. ¶¶ 28-29.

On the same day, Plaintiff placed a food tray on the floor outside the patient's room in clear violation of HVHC sanitary policy of which Plaintiff was aware. Pl. Tr. 231-232; McNamara Aff. ¶ 30. This action was upsetting to Plaintiff's co-workers and to McNamara because HVHC was undergoing a survey by the Joint Commission on Accreditation of Health Care Organizations ("JHACO"), which oversees the quality and safety of healthcare provided at accredited organizations. McNamara Aff. ¶ 27; Pl. Tr. 225-26. Upon learning that Plaintiff had placed the tray on the floor, McNamara approached her in the patient's room and brought her into the bathroom to speak privately. There she admonished Plaintiff for putting the tray on the floor.[2] McNamara Aff. ¶ 31; Pl. Tr. 234-36.

---

[2] According to Plaintiff, McNamara grabbed and/or pulled her by the arm into the bathroom. Pl. Tr. 234-36.

Based on these incidents, McNamara and Keeler made the decision that they were no longer willing to tolerate Plaintiff's chronic displays of poor judgment and failure to follow instructions. They recommended termination of her employment to Ruth Johnson, the Director of Human Resources. Ms. Johnson in turn reviewed the circumstances with Jeanne Costella, the Vice President of Human Resources and Ancillary Services, Kathy Webster, the Vice President of Patient Services, and John Federspiel, the President, all of whom agreed that Plaintiff's actions warranted termination. Once all of the necessary approvals were obtained, Plaintiff's employment was terminated on August 12, 2004. Johnson Aff. ¶ 18; Pl. Tr. 243-45.

## D.   Plaintiff's NYSDHR Complaint

Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging that HVHC terminated her employment based on her national origin and age in violation of the New York State Human Rights Law ("NYSHRL"). Ex. D, Complaint ¶ 7. Plaintiff never previously complained of discrimination to anyone at HVHC. Pl. Tr.53-59. Plaintiff's NYSDHR complaint did not allege that McNamara ever grabbed or pushed her, nor did it name McNamara as a respondent. Ex. D.

## E.   HVHC's Terminal Pay Policy

HVHC does not pay employees for accrued, unused sick, vacation, holiday or personal leave time upon termination of employment. The sole exception to this policy is that employees who resign and provide appropriate notice are paid whatever accrued vacation and holiday time they have remaining. As Plaintiff was terminated involuntarily, she was not paid for any accrued vacation leave in accordance with policy. Johnson Aff. ¶¶ 29-30; Exs. L-N.

## F.   HVHC's Policy on Overtime

HVHC complies in all respects with the FLSA. Ex. L. Accordingly, any non-exempt employee who works more than 40 hours in a week is paid overtime at the rate of one and one-

half times their regularly hourly wage. During her employment, Plaintiff was paid for 171.75 hours of overtime at the premium rate. Plaintiff never complained to anyone that she had not received overtime in the appropriate amount or at the appropriate rate. Johnson Aff. ¶ 26. Plaintiff was unable to specify how many hours of alleged unpaid overtime she is seeking in this case. Pl. Tr. 340-42.

Hours worked by employees on the Brillinger Unit, and throughout HVHC, are recorded by means of "sign-in" sheets on which employees are required to enter the time they arrive and the time they leave work each day. Plaintiff was aware of these sheets and utilized them to record her time. On occasions when Plaintiff or another employee forgot to enter their time, McNamara or another supervisor would make the entry based on the hours the employee was scheduled to work. McNamara Aff. ¶ 8; Pl. Tr. 374-75. The sign-in sheets are available to employees for review, and on any occasion when a mistake was made in recording Plaintiff's time, it was corrected by McNamara. Pl. Tr. 342-45, 371-72, 376, 391.

Nursing Assistants are not permitted to work overtime without authorization except when an emergency makes obtaining authorization impractical. McNamara Aff. ¶ 9; Pl. Tr. 382-83. Nursing Assistants are not required, nor are they directed to report for work 15 minutes prior to the beginning of their assigned shift. If they arrive for work early, they are not permitted to begin working until their shift begins. RNs on the other hand are required to report for work early and are paid for that time. McNamara Aff. ¶ 14.

**ARGUMENT**

## I. PLAINTIFF CANNOT STATE A *PRIMA FACIE* CASE OF DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN OR AGE

Plaintiff's claims under the ADEA and Title VII are governed by the same familiar burden-shifting framework. Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000). To establish a *prima facie* case of discriminatory discharge, Plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was discharged or suffered other adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Abdu Brisson v. Delta Air Lines Inc., 239 F.3d 456, 466 (2d Cir. 2001) (ADEA); Sanders v. New York City Human Resources Admin., 361 F.3d 749, 755 (2d Cir. 2004) (Title VII).

If Plaintiff demonstrates a *prima facie* case of discrimination, the burden shifts to HVHC to articulate a legitimate, nondiscriminatory reason for the adverse action. Reeves v. Anderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000). If HVHC meets this burden of production, the presumption of discrimination drops out of the case, and it is then incumbent upon Plaintiff to produce evidence sufficient to create an issue of fact as to whether the reasons offered by HVHC for the adverse employment action were not the true reasons, but were a pretext for discrimination. Reeves, 530 U.S. at 143, 120 S. Ct. at 2106 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507-08, 113 S. Ct. 2742, 2747 (1993)). "The ultimate burden of persuading the trier of fact that [HVHC] intentionally discriminated against [Plaintiff] remains at all times with the [Plaintiff]." Reeves, 530 U.S. at 143, 120 S. Ct. at 2106 (quoting Burdine, 450 U.S. at 253, 101 S. Ct. at 1093).

## A. No National Origin Discrimination Can Be Inferred

The circumstances surrounding the termination of Plaintiff's employment do not give rise to an inference of national origin discrimination. Plaintiff's employment was terminated on August 12, 2004 because HVHC determined that she: (a) twice left an at-risk patient unattended while performing a 1:1 watch on August 2; and (b) placed the patient's tray on the floor in violation of HVHC sanitary standards on that same day. Plaintiff had previously been warned on several occasions for failure to follow HVHC policies and procedures and, after the events of August 2, 2004, McNamara and HVHC were simply no longer willing to tolerate her recurrent misconduct.

Plaintiff has offered no evidence whatsoever of national origin discrimination. Plaintiff conceded that McNamara and Keeler, the individuals who recommended her termination, never made comments about her national origin. Pl. Tr. 35. Moreover, when questioned whether any other employees made offensive comments about her Polish national origin, Plaintiff offered only that one of the nurses once asked her how to say the letter "P" in Polish. Pl. Tr. 28. Plaintiff also testified that on another occasion a nurse named Lorraine commented that Plaintiff "doesn't understand English" after Plaintiff failed to collect urine from a patient. Pl. Tr. 27-28. Such comments are not objectively offensive and, while Plaintiff's testimony suggests that she was sensitive about her Polish ancestry, any offense she may have taken to such innocuous statements by her co-workers surely does not give rise to an inference of discrimination. See Minton v. Lenox Hill Hospital, 160 F. Supp. 2d 687, 695 (S.D.N.Y. 2001) (finding stray remarks by non-decision makers insufficient proof of discrimination); Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) ("Stray remarks by non-decision makers or by decision makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision.") (citation omitted).

Importantly, Plaintiff does not and cannot allege that McNamara, or any other individual involved in any disciplinary action against her, made disparaging comments about her national origin.

Any attempt by Plaintiff to create an inference of national origin discrimination is also belied by the fact that McNamara and Keeler, the individuals who made the decision to hire her, and who took disciplinary actions against her, were aware of her Polish background from reviewing her employment application, which revealed that she was educated in Poland. Ex. R. They were also aware of her Polish accent from speaking to her in the interviews. McNamara Aff. ¶ 4; Keeler Tr. 16. Nonetheless, they hired her less than two years before they terminated her employment. In addition, McNamara made the decision in March 2003 to promote Plaintiff to a full-time position despite knowledge of her Polish background. McNamara Aff. ¶ 3; Pl. Tr. 313. Plaintiff's claim that these individuals were biased against her based on her national origin is simply illogical in the face of such evidence. See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000), cert. denied, 530 U.S. 1261, 120 S. Ct. 2718 (2000) (When the same actor hires a person already within a protected class, and then later fires that same person, "it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."); Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997), cert. denied, 525 U.S. 936, 119 S. Ct. 349 (1998); Jones v. Yonkers Public Schools, 326 F. Supp. 2d 536, 546 (S.D.N.Y. 2004). The "same actor" inference is particularly relevant where, as here, the decision to hire and to terminate were made within two years of each other. Pronin v. Raffi Custom Photo Lab, Inc., 383 F. Supp. 2d 628, 639 (S.D.N.Y. 2005) (finding that "same actor" inference undermined plaintiff's claim, especially where the hiring and firing decisions were made within two years of each other); Ramos v. Marriott Int'l, Inc., 134 F. Supp. 2d 328, 345 (S.D.N.Y. 2001) (same).

## B. No Age Discrimination Can Be Inferred

Plaintiff has offered no evidence from which a reasonable factfinder could infer that her termination was based on age discrimination. Plaintiff alleges that, during an orientation training session shortly after she was hired, an HVHC nurse asked Plaintiff and others present to refer any "young girls" they knew of who wanted to work at the Hospital. Complaint ¶ 31. Plaintiff testified that she was unsure who made this comment, but thought it may have been Chris Malmgreen, HVHC's Director of Training, who would have been involved in the orientation program. Pl. Tr. 194-95.

HVHC denies that Ms. Malmgreen, or any other HVHC employee, ever made such a comment. Malmgreen herself is 59 years old, and it defies reason that she would make ageist comments of the kind alleged by Plaintiff. Even assuming, however, that Ms. Malmgreen or some other nurse made such a comment, it is hardly indicative of discriminatory animus against Plaintiff. First, Plaintiff had been hired by HVHC, despite the fact that she was not a "young girl," just weeks before. Second, neither Ms. Malmgreen nor any other employees in the Training Department had anything to do with Plaintiff's termination. Johnson Aff. ¶ 7. Moreover, Malmgreen had nothing whatsoever to do with any disciplinary action taken against Plaintiff during her employment. Id. Accordingly, such an ambiguous, stray comment by a non-decisionmaker of the nature alleged by Plaintiff cannot create an inference of discrimination. See e.g. Posner v. Sprint/United Management Co., 2007 U.S. Dist. LEXIS 20011 at *21-22 (S.D.N.Y. Mar. 21, 2007) (stray remark by non-decision maker insufficient to show discrimination in ADEA discrimination case).[3]

---

[3] Copies of cited unreported decisions are annexed hereto in the order cited.

Plaintiff has offered no other evidence of age discrimination. She concedes that neither McNamara nor Keeler ever made a comment about her age. She further concedes that nobody ever mentioned that age was a factor in her termination. Pl. Tr. 203-05.

In short, Plaintiff's "evidence" of age discrimination consists of nothing but hearsay and rank speculation that McNamara and Keeler are biased against older employees. Pl. Tr. 203-206. The fact that McNamara, at 65 years of age, is older than Plaintiff and Keeler, at 55 years of age, is just under three years younger, further diminishes any attempt by Plaintiff to create an inference that they engaged in age discrimination against her. McNamara Aff. ¶ 1; Keeler Tr. 5; see, e.g., Grady, 130 F.3d at 561 (counting among the factors belying a claim of age discrimination the fact that the decisionmaker who caused the plaintiff to be fired was the same person who hired her and was one year older).

## II.   HVHC HAD NON-DISCRIMINATORY REASONS FOR TERMINATING PLAINTIFF'S EMPLOYMENT

Even if the Court were to determine that Plaintiff has adduced evidence sufficient to create an inference of age or national origin discrimination, Defendant has plainly articulated a legitimate non-discriminatory reason for terminating Plaintiff's employment, specifically, her misconduct on August 2, 2004. HVHC received information from McNamara which revealed that Plaintiff, on that date, jeopardized the safety of a patient entrusted to her care, and violated policy of which she was indisputably aware, when she left a demented, at-risk patient unattended during a 1:1 watch. That same day, she also violated Hospital sanitary standards by placing the patient's food tray on the floor. As Plaintiff had previously been warned on several occasions for failing to comply with HVHC procedures, for failing to comply with direction from supervisory staff and for other egregious misconduct (namely, her racially insensitive comments to co-workers), and as progressive discipline had been utilized in addressing these situations, HVHC elected to terminate Plaintiff's employment. Johnson Aff. ¶¶ 16-18; McNamara Aff. ¶

33. Based on the foregoing, any inference of discrimination that may exist drops out of the case and Plaintiff has the burden of establishing that HVHC's stated reason for terminating her employment was a pretext for discrimination. To meet her burden, Plaintiff must demonstrate both that the legitimate non-discriminatory reasons proffered by the defendant were false and that discrimination was the real reason. St. Mary's Honor Ctr., 509 U.S. at 515, 113 S. Ct. at 2752; see also Belfi v. Prendergast, 191 F.3d 129, 140 (2d Cir. 1999) (inconsistent and pretextual explanations for contested employment decision insufficient to establish intentional discrimination).

Plaintiff cannot demonstrate that the stated reason for her termination was false. The decision to terminate Plaintiff's employment was made by several HVHC officials, including Keeler and Johnson, based on the recommendation of McNamara, who reported having observed that Plaintiff left a patient unattended, and who learned from speaking to others that Plaintiff left a food tray on the floor during her shift. Johnson Aff. ¶¶ 16-18. There is no evidence that the decision was made on any basis other than McNamara's report concerning what happened on August 2.

Plaintiff argues that she did not leave the patient unattended and that, at the times McNamara saw her in the hallway outside the patient's room, another Nursing Assistant, Ruth Espinoza, was sitting with the patient. McNamara has testified that she saw Plaintiff outside of the presence of her patient on two occasions and that, on the second occasion, she followed Plaintiff back to the room and directly observed that no other employee was present. McNamara Aff. ¶ 29. Espinoza testified that Plaintiff never asked her to assist with the patient or to sit with the patient while Plaintiff left the room. Espinoza Tr. 19-20. Plaintiff has offered no evidence to contradict Espinoza, with the exception of her own conclusory assertion that Ms. Espinoza was

present in the patient's room, nor has she developed any evidence that Ms. Espinoza had a motive to lie.[4]

Even assuming the existence of an issue of fact surrounding whether Plaintiff in fact left her patient unattended, Plaintiff has still not presented evidence from which a fact finder could infer that discrimination was the true reason for her termination. There is no dispute that Plaintiff was terminated based on McNamara's report regarding her conduct on August 2; however, Plaintiff apparently believes that McNamara fabricated her report for discriminatory reasons. Again, there is no evidence that McNamara was biased against Plaintiff based on her national origin or age. McNamara, with Keeler's approval, hired Plaintiff with knowledge of her Polish background and after having interviewed her. She also promoted Plaintiff to full-time status after having worked with her for several months. Moreover, McNamara, who was older than Plaintiff, hired and promoted Plaintiff knowing full well that she was not a "young girl" (to use the phrase Plaintiff attributed to Malmgreen). McNamara Aff. ¶¶ 3-5. Plaintiff's assertion that McNamara and/or Keeler were biased against her in the face of such facts is ludicrous.

## III. PLAINTIFF HAS OFFERED NO EVIDENCE THAT HVHC FAILED TO PAY HER OVERTIME COMPENSATION FOR HOURS WORKED OVER 40 PER WEEK

Plaintiff alleges that HVHC failed to pay her time a half for hours worked over 40 in a week and that instead, it only paid her at a straight time rate. Complaint ¶¶ 16-17. As discussed below, Plaintiff has offered no evidence whatsoever in support of this allegation apart from her own conclusory assertion. By contrast, HVHC has offered documentary evidence reflecting that Plaintiff was in fact regularly paid one and one-half her regular rate of pay in accordance with the requirements of the FLSA when she worked over 40 hours per week.

---

[4]    Plaintiff concedes that she left the food tray on the floor outside of the patient's room. Pl. Tr. 231-32.

15

Section 207 of the FLSA provides in relevant part that "no employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty] hours at a rate of not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). A plaintiff asserting claims for unpaid overtime under the FLSA has the burden of establishing the number of hours she worked and that she was not paid for those hours at the required rate. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 685-87, 66 S. Ct. 1187 (1946); Boyke v. Superior Credit Corp., 2006 U.S. Dist. LEXIS 93928 at *14-15 (N.D.N.Y. Dec. 28, 2006); McLaughlin v. Murphy, 436 F.Supp.2d 732, 737-38 (D. Md. 2005).

Plaintiff is simply unable to sustain her burden in this matter. During her deposition testimony, Plaintiff could not identify any date on which she worked overtime hours but was paid only straight time, could not state the amount of overtime compensation to which she was entitled and appeared to be unaware that the Hospital regularly paid her for overtime worked at the rate of one and one-half times her regular wage. Pl. Tr. 212-13. At first, Plaintiff was unable to state whether or not she had actually reviewed her paychecks to determine if she received overtime at a premium rate. Id. Finally, Plaintiff concluded that she had not in fact examined her paychecks, stating "I didn't check because I was told I'm not going to receive, so I believed they didn't pay me." Id. at 213. Plaintiff ultimately testified that the only overtime she received was for holidays. Id. at 341.

Despite her statement that someone at the Hospital advised her that she would not receive overtime pay, Plaintiff was unable to unequivocally identify who made that statement to her. Rather, Plaintiff claimed initially that an unidentified HVHC "supervisor" advised her that the Hospital did not pay time-and-a-half to Nursing Assistants. Pl. Tr. 210-12. Later, Plaintiff testified that McNamara advised her that HVHC did not pay overtime to Nursing Assistants. Id.

16

at 354. When pressed on this Plaintiff conceded that she was not certain whether McNamara ever made such a comment. Id. at 354-56.

HVHC unequivocally denies that McNamara or any other HVHC supervisor ever informed Plaintiff that HVHC does not pay overtime to Nursing Assistants. Plaintiff's attempt to create an issue of fact through use of inadmissible hearsay is unavailing. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999) (holding that hearsay statement "did not constitute competent evidence" and, thus, could not be considered in opposition to a motion for summary judgment); Greaves v. St. Luke's/Roosevelt Hosp. Ctr., 2005 U.S. Dist. LEXIS 4082 at *4 (S.D.N.Y. Mar. 16, 2005); Phipps v. Comprehensive Comm. Dev. Corp., 2005 U.S. Dist. LEXIS 1672 at *31-32 (S.D.N.Y. Feb. 2, 2005). Moreover, Plaintiff's allegation is unsustainable in the face of irrefutable evidence that she received 171.75 hours of overtime at time-and-a-half her regular rate during her employment. Johnson Aff. ¶¶ 27-28; Ex. K. It is clear that HVHC maintained a policy of paying overtime compensation as required by the FLSA and uniformly applied that policy to Plaintiff.

Plaintiff's inability to provide consistent or credible testimony with regard to whether HVHC refused to pay her overtime because she was a Nursing Assistant was matched by her failure to produce evidence of any kind concerning the number of hours she worked for HVHC in excess of 40 per week. Plaintiff testified that she simply did not know the number of overtime hours for which the Hospital owed her additional compensation. Plaintiff further acknowledged that she never kept records of the hours she claims she worked. Pl. Tr. 342, 353. Finally, Plaintiff testified that she has never attempted to determine the amount of overtime she is seeking in this case. Pl. Tr. 212-13, 340. Based upon Plaintiff's complete inability to in any way quantify her claim against HVHC for overtime hours, Plaintiff cannot sustain her burden of proof under the FLSA.

By contrast, HVHC has produced sign-in sheets and payroll records demonstrating that Plaintiff was in fact regularly paid overtime at the rate of one and one-half times her regular rate of pay. Ex. K. In fact, during the course of her employment, which lasted less than two years, Plaintiff was paid for 171.75 hours of overtime at the rate of one and one-half her regular rate of pay. Johnson Aff. ¶¶ 27-28; Ex. K. HVHC has produced sign-in sheets utilized by HVHC to record the hours Plaintiff worked. Johnson Aff. ¶ 25; Ex. J. Plaintiff has offered no credible evidence to cast doubt upon the accuracy of these records.

Plaintiff conceded that the sign-in sheets were used on the Brillinger Unit to track the hours she worked and that either she or McNamara would enter the time she arrived at work and the time she left work on the sign-in sheet. Pl. Tr. 360-61, 366-67. She alleges in conclusory fashion, however, that the sign-in sheets do not accurately reflect her hours worked because McNamara told her that she was only permitted to enter her scheduled hours on the sign-in sheet (i.e. 7am-7pm). Pl. Tr. 213-18, 361-63. She also alleges that McNamara told her that she should report for work 15 minutes earlier than her shift began to help out, but that she would not be paid because she was a Nursing Assistant. Id. at 361-62.

Plaintiff's allegations do not withstand scrutiny. First, the simple fact that Plaintiff was paid time-and-a-half for 171.75 hours in less than two years of employment belies any allegation that HVHC or McNamara were trying to evade the requirements of the FLSA. Moreover, the evidence reveals that Plaintiff's account of McNamara's statement reflects a mischaracterization or, at best, a misunderstanding of McNamara's statements regarding HVHC policy. McNamara concedes that she informed Plaintiff that she should arrive at HVHC prior to her designated shift, but this was because Plaintiff was regularly late for work in the early part of her employment.

McNamara Aff. ¶ 15.[5] A request by McNamara that Plaintiff arrive in time to begin work at the designated time is hardly a demand that she work without compensation. HVHC demands that RN's report to work 15 minutes prior to the 7am-7pm shift to be briefed on patients' conditions by the outgoing RN.[6] Nursing Assistants and other employees are not required, nor are they permitted, to work before or after their designated shift without prior authorization. McNamara Aff. ¶ 14. Such a policy is not inconsistent with the FLSA.

Plaintiff conceded that McNamara advised her that she was not permitted to work overtime without approval. Pl. Tr. 363-64, 383. Accordingly, it was plainly irrational for Plaintiff to begin work prior to the commencement of her shift, assuming she ever in fact did so, an assertion HVHC denies. HVHC was never aware that Plaintiff performed such work and never authorized it. McNamara Aff. ¶¶ 9, 13. Thus, it was not compensable. See Davis v. Pforr, 792 F.2d 1274, 1278 (4th Cir. 1986); Forrester v. Roth's IGA Foodliner, Inc., 646 F.2d 413, 414-415 (9th Cir. 1981); Newton v. City of Henderson, 47 F.3d 746, 748-749 (5th Cir. 1995); Bjornson v. Daido Metal U.S.A., 12 F. Supp. 2d 837, 842-843 (N.D. Ill. 1998).

Plaintiff has also failed to demonstrate that any additional, uncompensated work she did resulted in unpaid overtime in violation of the FLSA. Plaintiff alleges that for the first three to four months she was employed (i.e., when she was still a part-time employee), she would arrive for work approximately 15 minutes early, but was not paid for her time. Pl. Tr. 364. Plaintiff is unable to demonstrate however that any such work ever resulted in her working more than 40 hours in a week during that timeframe.

---

[5] Plaintiff was again inconsistent with regard to precisely what she was told regarding the availability of overtime compensation for arriving to work 15 minutes early. She claims that McNamara told her to "come early" to work, but concedes that McNamara also said she needed to start work at 7:00 am. Pl. Tr. 361-62.

[6] In effect, an RN generally works a 12.25 hour shift.

Finally, it should be noted that Plaintiff's allegation that she was not paid when she began work early is not supported by the documentary evidence. Her sign-in sheets in fact reflect that she, or a supervisor, regularly gave her credit on the sign-in sheets for time worked before or after her designated shift. Ex. J. For example, Plaintiff conceded that during the pay period ending July 19, 2003, McNamara made an entry on the sign-in sheet noting that Plaintiff commenced work on July 16, 2003 at 6:45 am. Similarly, on Tuesday, February 17, 2004, McNamara noted on Plaintiff's sign-in sheet that she started work at 6:45 am. Plaintiff conceded that she was paid for the extra 15 minutes on each occasion. Pl. Tr. 384-91. When questioned about the apparent inconsistency between Plaintiff's allegations and what McNamara in fact did on these occasions, Plaintiff speculated that McNamara entered 6:45 am on her timesheet because she mistakenly believed that Plaintiff was an RN. Id. at 384-85, 389-90. This assertion is abject speculation and is unsupported by any evidence in the record. In sum, Plaintiff's claim that she never received overtime is demonstrably false.

## IV.  HVHC HAD NO CONTRACTUAL OR STATUTORY OBLIGATION TO PAY PLAINTIFF FOR HER ACCRUED VACATION OR SICK TIME WHEN SHE WAS TERMINATED

Plaintiff's Fourth Cause of Action seeks payment of vacation and sick leave she had accrued at the time of her termination by HVHC. Plaintiff has not identified the specific section of the New York Labor Law under which she seeks recovery. Presumably, she is seeking recovery under § 198-c of the Labor Law, which provides in relevant part that "any employer who is party to an agreement to pay or provide benefits or wage supplements to employees . . . and who fails, neglects or refuses to provide . . . such benefits . . . shall be guilty of a misdemeanor." N.Y. Lab. Law § 198-c.

In Glenville Gage Co. v. Industrial Bd. Of Appeals, 70 A.D.2d 283, 286, 421 N.Y.S.2d 408, 409 (3d Dept. 1979), aff'd, 52 N.Y.2d 777, 436 N.Y.S. 621 (1980), the First Department

held that Section 198-c required only that an employer abide by the terms of any agreement to provide benefits. See also Gennes v. Yellow Book of New York, Inc., 23 A.D.3d 520, 522, 806 N.Y.S.2d 646, 647-48 (2d Dep't 2005). Plaintiff in this case has offered no evidence of any such agreement.

HVHC never agreed to pay Plaintiff her accrued vacation or sick time at termination. Johnson Aff. ¶¶ 29-30. Indeed, HVHC's policies regarding sick and vacation leave have always clearly stated that an employee terminated by HVHC is not entitled to any accrued leave time upon an involuntary termination. Johnson Aff. ¶¶ 29-30; Exs. M, N. HVHC makes no contrary representations to its employees and makes no exceptions to this policy. Moreover, HVHC's employee handbook contains a section on "Terminal Pay" which provides that an employee who resigns providing appropriate notice will be eligible to receive any accrued vacation leave she possesses at the time of termination. Ex. L. Plaintiff testified that she received and reviewed the employee handbook containing this policy upon commencing employment. Pl. Tr. 396-97. Thus, Plaintiff was clearly on notice of HVHC's policy limiting payment of accrued vacation leave to employees who resign on good terms. As Plaintiff has not demonstrated that she and HVHC were party to any agreement to provide her accrued sick or vacation time upon termination of her employment, her claim should be dismissed.


## V.  PLAINTIFF'S TORT CLAIMS ARE UNTIMELY AND UNSUPPORTED BY THE RECORD EVIDENCE

Plaintiff's Fifth and Sixth Causes of Action respectively assert claims of assault and battery and intentional infliction of emotional distress ("IIED") against McNamara and HVHC. Each of these claims should be dismissed because they are time-barred and lack supporting evidence.

## A.     Statute of Limitations

The tort claims are predicated on Plaintiff's allegation that McNamara "grabbed [Plaintiff] and pushed her into an unlit bathroom" on August 2, 2004. Complaint ¶ 84. The statute of limitations on assault and IIED claims in New York is one year. Holmes v. Lorch, 329 F. Supp. 2d 516, 523 (S.D.N.Y. 2004) (under New York law, the statute of limitations for assault and battery and intentional infliction of emotional distress is one year). Plaintiff filed this action on or about November 22, 2005, more than one year after McNamara's alleged assault. Complaint ¶ 9. Accordingly, her claims are untimely.

In seeking leave to amend her initial complaint, Plaintiff argued that the statute of limitations on her tort claims was tolled while her discrimination complaint was pending at the NYSDHR. There is a split of authority among the District courts in the Second Circuit concerning whether state law tort claims may be tolled while an administrative complaint is pending. See Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 375 (S.D.N.Y. 2005) (weight of authority is against tolling of one-year statute of limitations during investigation of related discrimination claim) (citation omitted); Gardner v. St. Bonaventure University, 171 F. Supp. 2d 118, 129-30 (W.D.N.Y. 2001) (same) (collecting cases). Magistrate Judge Yanthis granted Plaintiff's Rule 15 motion seeking leave to amend the complaint to assert the tort claims, adopting the minority view favoring tolling and, thus, rejecting Defendants' argument that the amendment would be futile.   See July 13, 2006 Decision and Order of Judge Yanthis (attached hereto).

Defendants submit that tolling should not be applied to salvage Plaintiff's untimely assault and IIED claims based on the evidence adduced in this case.  Prior to retaining counsel in this lawsuit, Plaintiff never alleged that McNamara grabbed or pushed her.  She did not raise this

allegation in her complaint to the NYSDHR, nor did she mention it in her original complaint. Ex. D. Moreover, despite the existence of individual liability under the NYSHRL (unlike Title VII or the ADEA), Plaintiff did not assert any claims against McNamara. Plaintiff apparently did not feel that McNamara's alleged "push" or "grab" merited mention in her discrimination complaint to the NYSDHR. She cannot now be heard to argue that tolling was necessary to enable the NYSDHR to investigate allegations she did not deem important enough – or sufficiently connected to her discrimination claims against HVHC – to raise before that body. Cf. Decision and Order of Judge Yanthis at 2 (noting that one of the reasons for tolling is to enable the administrative body to investigate allegations of discrimination and facilitate settlement).[7]

### B. **Assault and Battery**

Even assuming her battery[8] claim is timely, Plaintiff has failed to adduce evidence sufficient to justify recovery under New York law. First, she has not presented sufficient evidence to justify recovery for battery. In order to establish a *prima facie* case of battery, a plaintiff must prove that there was bodily contact, that the contact was harmful or offensive, and that defendant intended to make contact without plaintiff's consent. Carroll v. Bayeriche Landesbank, 125 F. Supp. 2d 58, 65 (S.D.N.Y. 2000). According to Plaintiff, McNamara released her arm the second that she entered into the restroom. Pl. Tr. 104. In response to questioning whether her arm was sore from McNamara grabbing it, Plaintiff testified, "[w]as

---

[7]    Cases that have allowed tolling generally involved tort claims involving facts identical to those underlying the employees' discrimination claim. See, e.g., Brown v. Bronx County Med. Group, 834 F. Supp. 105, 109 (S.D.N.Y. October 14 , 1993) ("As a threshold matter, the operative facts underlying plaintiff's Title VII claim are identical to those underlying plaintiff's state law claims"). Here, Plaintiff brings assault and IIED claims against McNamara which are factually distinct from her claims of discriminatory discharge against HVHC.

[8]  Insofar as Plaintiff is alleging that McNamara actually "grabbed" and "pushed" Plaintiff (Complaint ¶ 84), we address the Fifth Cause of Action as one for "battery," not "assault," which does not require physical contact. See Carroll v. Bayeriche Landesbank, 125 F. Supp. 2d 58, 65 (S.D.N.Y. 2000) (setting forth elements of assault claim and battery claim).

sore very little. Very little. Not much. Not much." Pl. Tr. 107. Plaintiff sought no medical attention, and never complained to anyone that McNamara had touched her. Id. at 112-13. Plaintiff claimed that she was "nervous," "shocked," and "depressed" after the incident; however, her distress was related to the concern that she would be disciplined for leaving a tray on the floor, not because of McNamara's alleged battery. Id. at 114. In any event, any ill effects she alleges she suffered as a result of the alleged battery were gone that same day when McNamara spoke to her about her schedule for later that week, thus alleviating her concern about discipline. Id. In short, Plaintiff cannot demonstrate any damages related to McNamara's alleged "battery" and therefore cannot sustain her claim.[9]

## C.     Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotional distress ("IIED") claim is insufficient as a matter of law. To state a claim, Plaintiff must allege and prove that Fordham engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy v. American Home Prods., Inc., 58 N.Y.2d 293, 302, 461 N.Y.S. 2d 232, 236 (1983). The conduct alleged by Plaintiff, even if it were true, falls far short of meeting this stringent standard. See William v. Port Auth., 880 F. Supp. 980, 994-95 (E.D.N.Y. 1995) (IIED claim based on racial slurs in workplace dismissed); Wanamaker v. Columbian Rope Co., 740 F. Supp. 127, 138 (N.D.N.Y. 1990) (allegations of age discrimination insufficient to establish intentional infliction of emotional distress).

Plaintiff's allegation that McNamara pushed or pulled her in the course of reprimanding her for placing a tray on the floor falls far short of this standard. See Clarke v. UFI, Inc., 98 F.

---

[9] The mere existence of a wrong, without some identifiable damages, provides no basis for a cause of action. Am. Jur. 2d Actions § 56. Thus, damages are an essential element and in the absence of damages, an action may not be maintained. Simon v. Noma Electric Corporation, 293 N.Y. 171, 56 N.E.2d 537 (1944).

Supp. 2d 320, 328-329 (E.D.N.Y. 2000) (dismissing at summary judgment stage claim for IIED where plaintiffs alleged supervisor pinched and touched them); Lucas v. South Nassau Communities Hospital, 54 F. Supp. 2d 141 (E.D.N.Y. 1998) (momentary physical touching insufficient to support a claim of IIED); Ponticelli v. Zurich Am. Ins. Group, 16 F. Supp. 2d 414, 441 (S.D.N.Y. 1998) (allegations did not rise to level of IIED where plaintiff accused defendant of pushing her into a filing cabinet); Jaffe v. National League for Nursing, 222 A.D.2d 233, 635 N.Y.S.2d 9 (1st Dept. 1995) (plaintiff's allegations, which including a hard slap on plaintiff's backside, "fell short of the rigorous standard of outrageous conduct necessary to maintain a cause of action for intentional infliction of emotional distress). Plaintiff simply has not presented allegations or evidence that satisfied this rigorous standard.

Plaintiff's IIED claim must also be dismissed because it is based on the same allegations as her assault claims. A cause of action for IIED should not be entertained where the conduct complained of falls within the scope of other traditional tort liability. See Roper v. Hynes, 2006 U.S. Dist. LEXIS 69128, *43-44 (S.D.N.Y. 2006); Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y. 1998) (dismissing claim for IIED because conduct complained of was addressed by plaintiff's claims of assault and battery); Di Orio v. Utica City School Dist. Bd. of Educ., 305 A.D.2d 1114, 1115-16, 758 N.Y.S.2d 743, 745 (4th Dept. 2003); Demas v. Levitsky, 291 A.D.2d 653, 660, 738 N.Y.S.2d 402, 409 (3rd Dept. 2002) appeal denied, 58 N.Y.2d 728 (2002). Accordingly, the IIED claim must be dismissed.[10]

---

[10]     Assuming Plaintiff's IIED claim is based on the termination of her employment, it is clearly insufficient as a matter of law. See Bailey v. New York Westchester Square Medical Centre, 2007 NY Slip Op 99 at *5, 829 N.Y.S.2d 30, 35-36 (1st Dep't 2007) ("In an at-will employment situation such as here, termination of employment alone 'may not form the basis of an intentional infliction of emotional distress cause of action'") (citing Fama v American Int'l Group, Inc., 306 A.D.2d 310, 311, 760 N.Y.S.2d 534, 536 (2003)).

## **CONCLUSION**

For all of the foregoing reasons, the Defendants respectfully request that the Court grants them summary judgment on all of Plaintiff's claims with prejudice and grants such other relief, including costs and attorney's fees, as the Court deems just and proper.

Dated: New York, New York
   May 15, 2007

       PUTNEY, TWOMBLY, HALL & HIRSON LLP
       *Attorneys for the Defendants*

       */s/*
       Sean H. Close (SC- 7429)
       521 Fifth Avenue
       New York, New York 10175
       (212)682-0020

# CERTIFICATE OF SERVICE

The undersigned, a member of the Bar of this Court, hereby certifies that he personally served a true and accurate copy of the foregoing NOTICE OF MOTION; AFFIDAVIT OF RUTH JOHNSON; AFFIDAVIT OF CATHERINE MCNAMARA; THE DECLARATION OF SEAN H. CLOSE; DEFENDANT'S RULE 56.1 STATEMENT; THE APPENDIX OF EXHIBITS; AND DEFENDANTS' MEMORANDUM OF LAW this 15th day of May, 2007, via Federal Express upon:

Andrew S. Baron LLC
1025 Westchester Avenue, Suite 106
White Plains, New York 10604
(P) 914-261-7807
(F) 914-206-4698


/s/_____
Sean H. Close (SC 7429)